Thank you, and may it please the Court. My name is Deepak Gupta for the Plaintiffs' Appellants. I'm going to try to save five minutes for rebuttal, but I understand that's my responsibility. I think the most useful thing I can try to do this morning at the outset is to try to focus this Court on the two ways in which I think the District Court most apparently abused its discretion so as to require reversal. And I think if we focus on these two issues, it shows that some of what has been briefed may not be necessary for this panel to decide. Nobody disputes that the plaintiff's prima facie case satisfies Rule 23, so the focus of the debate between the parties focuses entirely on the defendant's affirmative defenses under the professional and administrative exemptions. And as to both exemptions — There may be prima facie agreement as to 23a, but as I read the briefs, 23b-3 is very much an issue. Oh, yes, Your Honor. I don't mean to suggest that the parties agree on really on anything that we've briefed. I think my friends, to be fair to them, I think they disagree on Rule 23a as well. So the parties hotly debate whether there's a Rule 23 class action here. All I mean to say is that the focus of the debate is entirely on the defendant's affirmative defenses, the professional and administrative exemptions. And as to both exemptions, it's our contention that the District Court disregarded common threshold issues that are capable of class-wide resolution, issues that, if you frame them in terms of the Supreme Court's language in Walmart v. Dukes, are capable of class-wide resolution, they're capable of being resolved in one stroke. And this is the rare case in which those issues really will dissolve, dispose of the merits. Usually when you have predominance issues, you have a plaintiff who's identifying common issues that go to several elements of the case. What are those two issues? Those two issues are, first, on the professional exemption, it's the advanced knowledge and specialized instruction. But as I understand it, that's one of four components? It is. And nobody contests that they – well, I don't know whether anybody contests it, but does it make any difference given the judge's conclusion that, as to the various other components, there were not common questions? Here's why it's different here from the usual situation in which you're dealing with predominance. Because if we win on that issue, if we win on advanced specialized instruction, we win that exemption. The professional or the administrative? The professional. Why is that? Because the requirements under California law are conjunctive. As long as the plaintiffs win on any one of these prongs of the exemption, the plaintiffs prevail. It is the defendant's burden to show that every one of the requirements is contested. And so if the plaintiffs aren't contesting another prong of the exemption, then that exemption really isn't relevant to the analysis. And so what the district court said, and I think this is the first one. But I want to understand your position. Your position is under California law, if the class members all are required to have specialized instruction, that by itself alone qualifies them for the professional exemption. Or the opposite. It shows that they're not. Exactly. The district court says, well, that issue doesn't predominate. And I was struggling a bit with that. I mean, it does seem, I'm not sure the district court said expressly, but it does seem that the district court was saying, well, that's not a very interesting question. And on all the interesting questions, it's not going to be efficient to certify this class. Yeah. Because it has to be done on a case-by-case basis. But what was wrong with that analysis? Yeah, I mean, I've been struggling with this, too, because it's not exactly clear what the district court meant. There are only four pages of analysis. And I think the relevant thing, and maybe it's what you're pointing to as well, is the carryover sentence at pages 9 through 10 of the joint appendix. And here's what the district court says. The district court said, while a part of the inquiry can be decided on a class-wide basis, specifically whether Deloitte's hiring requirements satisfy the specialized instruction prong, common issues don't predominate because under the wage order in Campbell, exempt status turns on what employees actually do. And that was my question, too, so tell me why that's not so. Yeah, well, it's not clear what the district court means. If the district court means to say that we can't prevail on the professional exemption because there are these other things that turn on what employees actually do, that's not a correct statement of California law, right? If we win on this exemption, then we win the professional exemption. They seem to be saying that that's not an interesting question. I mean, you want to say, well, it's sort of a peek at the merits.  And the touchstone of Rule 23 is efficiency. The district court says, look, it's not going to be efficient because even getting past this thing, there's so many other issues we have to deal with. What was wrong with that? There are a lot of things that are wrong with it. First of all, the test isn't whether the issues are interesting, right? The question is what's going to dispose of the litigation. And if we win on this issue, that disposes of the professional exemption. The only thing left is the threshold question then under the administrative exemption, which I'll submit is even less interesting. Could you turn to the administrative exemption and say what's the dispositive issue there that the court, in your view, ignored? Yeah, the dispositive issue is whether or not the work here is directly related to management policies or general business operations. And here I can't read you the sentence from the district court's decision that analyzes that element because the district court doesn't have one. The district court did not engage in any analysis of that issue. But why isn't that an individual issue? It's not. Why doesn't that turn on the work done by each of the purported class members? It's not an individual issue because, well, under the California Supreme Court's decision in Harris, what you examine first is whether or not the work is qualitatively administrative. And Deloitte's position, and I'll point you to page 55 of their brief, they say when plaintiffs perform accounting work, they engage in qualitatively administrative activity. Well, they may lose on that. So that's sort of irrelevant at that part, the point about what Deloitte may argue which goes to their merits. I mean, Harris said you need to consider the facts of each case, and they rejected a per se rule for that. So why wouldn't the district court be correct that you can't answer that issue at one stroke? You have to look at the varying duties. Well, it's the defendant's burden. And so I think the reason I'm pointing to what the defendant says about how they'll carry their burden is that shows you that they don't think that this is an individualized inquiry. I'm sure my friend will get up and explain why. I mean, they may be wrong. The question about whether it's more efficient to look at this case in a class context is sort of irrelevant, what their view of the merits is. I think maybe the best place to look is, you know, in Campbell itself. The case went back down on remand, and the judge there was asked to decertify the class and refused. And there are two classes proceeding against Price Waterhouse that essentially, if you combine those two cases, make up the equivalent of the class in this case against Deloitte and Tusch. And what the court said on this directly related to the --. You're talking about the district court? The district court, yes. Well, they may have been wrong. They may have been wrong, but I think it's persuasive, and I think it's useful to look. It's possible that the district court in Campbell didn't abuse its discretion in certifying classes, but that this court also didn't abuse its discretion. So the question isn't whether or not it would be possible. That's right. The question is whether or not this court abused its discretion. That's right. And I only need to point you to the analysis in the Cresp case because I think it's persuasive, and it's cited in our reply brief. And what the court said there is what the plaintiffs are arguing is that the relevant standards governing the practice of accounting under California law and the federal professional standards, it is illegal for these unlicensed audit employees to assist clients or to manage these operations. And so that's a categorical question. It's either true or false. We could lose on that. We could win on that, but we would do so as to the class as a whole. That's an alternative argument, isn't it? Don't they also argue that on a case-by-case basis, some may be doing stuff that qualifies for the administrative exemption and some may not? Well, that's not the theory that we're putting forward here. It's not the theory that the court certified in Cresp. I think if the court said, look, I reject the White's argument, the one that you just laid out, but I still have individual questions to resolve because then I have to then look at, even if they're not categorically forbidden from doing, in effect, professional work, on a case-by-case basis, some may be doing it and some may not be. And it's provided affidavits. I think that can be read that way. Let me be clear. I mean, it's our theory that I'm describing, right, which is that in order to advise clients, the management – No, but my point is the court could accept or reject your theory and then still have individualized inquiry to make as to whether or not there's liability to members of the class. Is that right? That's true of both exemptions. In other words, we could lose on these theories and then you'd be left with something that wouldn't have these common class-wide issues, right? And then the question is, would that be manageable as a class action? And the only thing really left would be the same for both exemptions, which would be independent judgment and discretion. And I'll concede to you that's a tougher case to make for us than the two common issues. But, you know, it's our – we're the plaintiffs. We're the master of how we choose to contest the defendant's burden. We could decide not to contest that burden. The district court could decide if the plaintiffs lose on both of these common questions, that there's no class action anymore. But the policies of Rule 23 would certainly be furthered by certifying the case and allowing – But let me follow through on this, because this is where I'm having some difficulty, and I want you to help me on it. Let's assume you prevail with respect to the administrative exemption on the common question. Yes. There still would remain, would there not, individualized questions? Oh, no, there would not. And I want to be clear about that, because the administrative exemption functions the same way that the professional exemption does. So your view is that if they are forbidden by law to do the appropriate tasks, even if Deloitte assigns them to those tasks, you nonetheless prevail? Well, I think – I mean, they're going to then be arguing that they're engaged in – Well, but I mean, you know, the judge interprets the law to say they can't possibly be doing – And that's the fact of what happened in Campbell. I mean, this is what troubles me a little bit. The judge interprets the law to say they must all be exempt because that's what you're arguing, and that's what was argued to the judge initially in Campbell. Yeah, I think it's – And it went up on appeal, and we said, no, they might not be. Go back and do this again. Now you're saying, well, they have to be. It's a very different argument, I think. I mean, what we're saying here is – so to – let me explain what the management policies and general business operations exemption means. I think that might be helpful. So they would have to show either that these folks are engaged in management policies at Deloitte or for one of its clients. And I don't think there's a serious argument that they're engaged in management for Deloitte itself. I think that was substantial importance to management or business operations, as Al Harris described it. That's right. And so they say, yeah, it is. That seems like sort of a squishy standard because it doesn't require them to be managing anyone. It just has to be of substantial importance. Well, it has to be of importance to management policies. They have to actually be working on management policies. And these are folks – there's another point I should have said much earlier. These are folks that cannot engage in internal audits, right? They can only engage in external audits, which are the kind where you certify – Well, but if they're auditing, and that's why I don't want to use up your rebuttal time, so I'll try to answer this quickly. I have the same concern on the professional exemption. They may require to hire them specialized training, but then Deloitte says, but we don't necessarily employ them all to do the stuff that they're specially trained for. And Deloitte says on the other end, well, they're not all in management, if you want to use that term, but some of them do. And so you're going to have to look at them each individually. Respond to that. Yeah, I think this is just allowing one prong of the exemption to bleed into the other. I mean, this court is very clear in Solis versus Washington Department of Social Services that on the advanced specialized instruction prong, it's just about what the job requirements are. It's not about what folks are actually doing. And on the management policies exemption also, it's whether or not they're actually engaging in the management policies of their clients. And they're forbidden by law from doing that. There's a whole other branch of Deloitte that does management consulting. These folks just do external auditing, which by definition is not engaged in the management policies of the client, and it's illegal to do so. So that's why their contention, that's why they've argued it as a question that's common to the class qualitatively. And that's why we think we can disprove it in a way that's common to the class, if I may, I'd like to reserve. Thank you. I'll give you an extra minute, so you can have two minutes and 15 seconds. Good morning. My name is Peter Walker from Syphos Shaw LLP, and I'm here representing the appellees. I want to start with the advanced instruction point that was made. The fact of the matter is, and plaintiffs have conceded below, and have conceded in their brief on page 11, that every single person hired by Deloitte had the educational background ready to sit for the CPA exam. The CPA exam has four parts. One of those parts is auditing. One is financial accounting and reporting. One is business environment, and one is regulation. So the state of California and the AICPA have said that you need a certain educational background as your ticket to join the profession as a certified public accountant, and every single person hired by Deloitte has this background. So that goes to the question that I was asking, which is the district court seemed to think it wasn't an interesting question. But isn't it the case that it hasn't been, there's no federal court saying, well, that type of instruction specifically meets the field requiring specialized instruction prong of the professional exemption. Well. I mean, that's your merits argument, but they're saying, well, hypothetically, a court could decide, no, that doesn't meet that prong, and therefore professional exemption doesn't apply. The state of California in Wage Order 4 has two prongs for the exemption. Prong A is an automatic exemption in one of seven or eight fields, and one of those is accounting. So the state of California has decided that if you have a CPA in accounting, you are exempt. But these people don't have a CPA. I understand they don't. And so that's the question, the merits question. Maybe you win. But why isn't that an issue as to every member of this class? It is a question with every member of this class. But if at the outset the plaintiffs have already conceded that everyone had the educational background to sit for the CPA, and the state of California has decided that a CPA. But that's a merits argument. Judge Okuda asked you the same question, so let me ask it again. They're saying, with respect to every single member of this class, we think they're not professionals, if you will. You say, oh, I think they are. And the judge can answer that with respect to every member of the class. Either you win as to that issue and they go away, or they win as to that issue and something happens. Why shouldn't the judge decide that issue as to every member of the class on the basis? Right. I understand the question. Because if the plaintiffs have not suggested any other standard of advanced instruction, federal regulations, state regulations. No, we're focusing solely on the fact that they're eligible to sit for the CPA exam. They've taken sufficient instruction to be eligible to sit. And that means that they have an educational background that would mean that if that's the case, then the common question doesn't, at one stroke, solve anything. Why is that? They all have the same, none of them have a CPA, they all have the same level of instruction. And the question is, is that specialized instruction for purposes of the exemption? That's the question. And that question can be answered in one stroke. Does not having a CPA but having specified instructional level meet that prong? There's a question on what you might win at the outset, right? If this is specialized instruction and they are professionals, you win, correct? I win one. You win on that prong. I win on that exemption. But then where we find ourselves is in the soup of everything else. So unless you can say, they say, hypothetically, we could win on that prong because it hasn't been definitively determined. If they win, then the professional exemption falls away. You're not entitled to it. And we still need to look at the administrative exemption. Or do we? We still need to look at the administrative exemption, but I want to address the judge's question, which is they may not win on all of them. Those may be individual questions with regard to advanced instruction. The record is that many of the accountants hired by Deloitte have master's degrees in accounting. There's a whole panoply of different educational backgrounds, all of which meet the minimum standard. But isn't that a common question? Isn't the common question whether or not meeting the minimum standards to take the CPA exam in California constitutes specialized instruction for purposes of the professional exemption? Because aren't we looking at Deloitte's hiring requirements? That's what the district court said. It's hiring requirements, not what the educational capacity is of everybody who is hired. But my point is if everyone satisfies the minimum, and you've got a lot of people in the putative class who are at even a higher level with master's degrees and a variety of other educational backgrounds, business background, remember that the exemption under Wage Order 4 says that this advanced instruction is customarily gained through advanced instruction. But there may be other ways that this can be obtained as well. So my point here is that it's obtained through anything except instruction. In other words, the qualification to take the CPA exam, isn't it only gained through instruction, not through sitting in a law office, for example, as people used to do in the 1800s? You need to have a minimum level of instruction. But for purposes of the exemption, there may be situations where you don't customarily obtain it. In the legal profession, one way was working with a licensed professional for a period of time. Can you switch to the administrative exemption and the opposing counsel's view that the performing work directly related to management policies or general business operations could be decided in one stroke because it's unlawful for this class of auditors to do that sort of work? Yes, I think that Mr. Gupta is misconstruing the exemption in our argument. We are not saying that our junior auditors are management consultants to attest clients. But if you read the language to qualify for the exemption, it has to be of substantial importance to the client's operations. I can't think of anything of more importance to a client's operations than being able to make sure that their public financial statements are correctly stated, free of fraud, and satisfy all of the requirements of SOX. And so the Campbell Court, the Ninth Circuit, dealt with this issue and said that it would be a case-by-case discussion. Quoting the Ninth Circuit, the more important question and the one the jury will need to resolve is whether plaintiff's work for PWC's clients during audit engagements is of substantial importance to the management of operations of a client business, citing Federal Regulations 541.205c1. And so basically what would have to happen is we would be having these individual mini-trials with regard to each and every one of these auditors, because what they do varies significantly from audit to audit, from the industry they're working in. I mean, different industries have different accounts that have to be audited, and whether that's of importance to the client, we would have to determine that. The other part is it's got to be of importance to Deloitte. And many of these, from the record, they develop budgets, they develop audit plans, they develop a variety of kinds of work that is not manual, it is not the same in every case, and we would have to go through that issue by issue. Let me just give you one example which just stands out to me, and that is the lead plaintiff here, James Brady. When he was hired by Deloitte, he had passed all four sections of the CPA exam. Deloitte evaluates its personnel on scorecards and annual reviews, and if you read Mr. Brady's annual reviews, it looks like he is engaging in work that requires judgment and discretion and of great importance. You read his Form E submitted to the state of California. It looks like he has done all of the work necessary in order to become a CPA. You read his declaration in this case, and it was, I never did anything, I was just watching the entire time. And so that illustrates the kind of individual determinations we're going to get into, plaintiff by plaintiff, putative class member by putative class member. And Mr. Gupta referred to the fact that we're talking about our affirmative defenses, we certainly are. And I think the teaching of Dukes is that we have to have the opportunity to try to prove our affirmative defenses on a case-by-case basis. Plaintiffs have not put forward any trial plan here whatsoever. Well, go back to the professional exemption again. I think you've been addressing the administrative one. Tell me how, with respect to the specialized learning one, it's an individual case-by-case determination. I understand how the other three prongs of the professional exemption might be individualized. Tell me why that's an individual, because it focuses on your hiring requirements. I am not sure when you have a population, this class is something a little over 1,800, where they all, undisputed, meet the minimum. And many, it will be undisputed, have the minimum. More, have more. But isn't the common question whether the minimum required meets the professional training, specialized training prong of the professional exemption? Well, some judge, in order to try to disqualify it. Isn't that yes or no? Is that a common question? It is a common question, but it may not be a common question within the meaning of Dukes that be able to dispose of an issue in one stroke. Because at some point, a judge would have to say, well, I believe that the advanced instruction is X. Now, if it is at or below. Now, I understand if the judge thinks that your minimum requirement is not sufficient to meet the professional exemption and sets some other level, then individualized determinations will be required. I think I was asking a different question, which is, isn't it a common question as to all members, as to whether your minimum requirement meets the specialized training exemption? Yes. It is a common question, but it doesn't necessarily dispose of the case. Well, if the judge answers it. In one stroke. If the judge answers it, yes, it does. Does it dispose of the case? No. Why not? It just simply is a common question that everyone has to have an advance. So what if the judge says, no, your minimum hiring requirement is not a field requiring specialized instruction. It's not specialized instruction. Are you saying that the court would nevertheless have to go through and say, but in some cases, you're hiring required people with higher degrees of education, so even though you have a policy, you don't always follow it, and sometimes you require more. Is that what you're saying? Well, we're not violating our policy by getting people with higher, but what I am saying is that unless you put that level at the doctorate degree, you're not going to. No, no, but I'm asking again. So I want to understand this because I'm not sure I do. The plaintiff class says we all have the minimum required to be hired by Deloitte. We believe that minimum required satisfies the specialized training prong of the professional exemption. Judge, tell us yes or no. If you tell us no, then we have individualized questions and we can't have a class action. If you tell us yes, we're all professionals. The other way around. If you tell us yes, we're all professionals and we lose, if you tell us no, then maybe we have individualized questions. So you could win the case in one fell swoop, if you would. Does that justify class action? No, no. Unfortunately, I wish that were so, Your Honor. No, I mean you being them. They could win the case in one fell swoop. Only on the professional exemption. But it's a win. It's a win. Does that justify class treatment? No, it doesn't justify class treatment, because I believe that while it is a common question, it is not realistically going to dispose of this case. You still have the administrative exemption and all of those individual determinations. But do you have to go to the administrative exemption if there's a professional exemption? Certainly. Why? There are different standards. I could meet the administrative standard and not meet the professional standard. So if the court struck the professional exemption based on that question and they said you were not entitled to claim and not give them the overtime, et cetera, based on the professional exemption, the court would still have to adjudicate your claim that, well, in any event we have an administrative exemption which is applicable here. Yes, Your Honor, on an individual by individual basis. Thank you, Your Honor. Thank you, Ms. Walker. Please put two minutes on there. I appreciate the extra minute. Very briefly on the advanced specialized instruction prong, because I think my friend said it really is an inquiry that's for every class member. If that were right, why did we why did this Court reverse Campbell? Well, Campbell didn't address this prong at all. Campbell said nothing about the advanced specialized instruction prong. It wasn't argued, and I think had it been the focus, the Court would have looked at this Court's decision in Solis, which at page 1084 answers your question, Judge Hurwitz. It says that the inquiry is whether a specialized academic training is a standard prerequisite, basically whether it's the minimum. So let's go back to where your opponent ended, which is, I think, a helpful place to go back to. So he says, okay, so we resolve that. Right. We still think they're all entitled to the administrative exemption. Right. And that's an individualized inquiry. Right. So the judge didn't abuse his discretion because all he would have done is he might have thrown you out of court, but that's the best he could do. Right. Or, I mean, in that case, you might use Rule 23c-4 because you'd have an issue class member. But it's an abuse of discretion for the judge to say, well, there's one issue I might be able to resolve on a class-wide basis, but I'd still then thereafter have to do individualized inquiries as to liability, and so I choose not to. Yeah, that's the standard predominance analysis, right? And then you have to figure out, do the individual issues predominate? But here there are two threshold questions that are class-wide, and I want to try to persuade you why on the management policies exemption, why that's class-wide. And I think, Judge Okuda, you mentioned the substantial importance inquiry. Right. Harris makes clear that it's a two-step inquiry. First, under Harris, you ask whether the work is qualitatively administrative, and then, only then do you ask whether it's quantitatively administrative, meaning of substantial importance. Our point is that the action here is going to be on that first question, and my friends don't really deny that, right? They say that audits are important to our clients, and they concern management, right? But qualitatively administrative was not particularly precisely defined by Harris, so it's hard to say that that's answering the question in one stroke. But you could say as a matter of law, nothing these people are doing is qualitatively administrative. May I answer the question? You know, I think our point is that on the qualitatively administrative question, you look to whether the relevant accounting standards preclude the sort of activity that would be management activity. And this is something that the district court in the Crest case addressed. And at footnote 25 of that decision said, if Pricewaterhouse is arguing that there's some informal practice that's illegal and violates these accounting standards, how could that possibly be a reasonable job expectation under the California Supreme Court's decision in Ramirez? Thank you. Thank you very much, counsel. Thank you for an interesting and informative argument. And that will conclude our hearings for today, and we conclude the hearings for this week. Thank you very much. We stand adjourned.
judges: BEA, IKUTA, HURWITZ